**In Re Jonn M. JORDANA, doing business as Mediline Service Corporation, doing business as Intercorp Investment, Debtor.**

**Magdelena Moretta McCart, Plaintiff–Appellee,**

v.

**John H. Jordana, doing business as Mediline Service Corporation, doing business as Intercorp Investment, Defendant–Appellant.**

**BAP No. WO–98–051.**
**Bankruptcy No. 97–17566.**
**Adversary No. 97–1400.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

April 16, 1999.

Duane N. Rasmussen (Stanley S. Parsons with him on the brief), Oklahoma City, Oklahoma, for Defendant—Appellant.

Mark W. Kuehling of Lamun, Mock, Featherly, Kuehling & Cunnyngham, Oklahoma City, Oklahoma, for Plaintiff—Appellee.

Before CLARK, PEARSON, and ROBINSON, Bankruptcy Judges.

## OPINION

PEARSON, Bankruptcy Judge.

Jonn M. Jordana appeals two orders of the United States Bankruptcy Court for the Western District of Oklahoma. The first order denied his motion to avoid McCart's lien against his homestead. The second order granted summary judgment in favor of McCart, holding that her claim against the Debtor is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (B). *See In re Jordana*, 221 B.R. 950 (Bankr. W.D.Okla.1998). For the reasons discussed below, this Court affirms the bankruptcy court's rulings.

## JURISDICTION AND STANDARD OF REVIEW

This Court, with the consent of the parties, has jurisdiction to hear appeals from final judgments, orders, and decrees, and with leave of the Court, from interlocutory orders and decrees of bankruptcy judges within this circuit. 28 U.S.C. § 158(a), (b)(1). The Bankruptcy Appellate Panel may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact are not to be set aside unless clearly erroneous. Fed. R. Bankr.P. 8013. *See First Bank v. Reid (In re Reid)*, 757 F.2d 230, 233–4 (10th Cir.1985). Conclusions of law are reviewed de novo. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988).

## BACKGROUND

On August 1, 1997, the Debtor filed a petition for relief under Chapter 7. On October 1, 1997, McCart timely filed a Complaint Objecting to the Dischargeability of Debt seeking to prevent the Debtor from discharging the default judgment she had obtained against him in the United States District Court for the Western District of Missouri ("District Court"). The Debtor filed an answer on October 31, 1997.

The District Court entered a default judgment against the Debtor in McCart's suit against him for fraudulently inducing her to invest in worthless securities. The Debtor's attorney withdrew from that case early in the proceedings. The District Court advised the Debtor to obtain new counsel but the Debtor refused, stating that God was his counsel. In its Minute Order, the court repeated its advice that the Debtor not attempt to proceed *pro se* since a failure to comply with the rules of procedure could lead to a default judgment against him. McCart served the Debtor with a First Amended Complaint on April 12, 1992. The Debtor never filed an answer in spite of repeated admonishments

from the District Court that he must comply with the court's rules. The Debtor did not comply with McCart's discovery requests, in spite of receiving six letters from McCart's counsel requesting that he do so. The Debtor absconded with the original copy of his deposition and refused to return it. On February 5, 1993, McCart filed a Motion for Entry of Default Judgment. On February 10, 1993, the District Court filed an order directing the Debtor to show cause in writing why it should not enter default and grant judgment against him. On March 24, 1993, the Debtor responded with a letter in which he alleged that McCart's lawyer had been lying about him, that McCart had told his family that he should not be a party to the suit and that his family knew that he was completely blameless. McCart responded with declarations and exhibits supporting an entry of judgment. The District Court entered a default judgment against the Debtor on August 17, 1994, stating:

> [f]urther, the Court finds that the facts set forth in the Declaration of Plaintiff's counsel and of Evan F. Acker are true and that defendant Jordana has assiduously pursued a policy of obfuscation, refusing to cooperate in discovery and refusing to answer the plaintiff's First Amended Complaint, in spite of repeated warnings by both plaintiff's counsel and this Court.

(*See* Appellant's App. at 9.) The District Court entered a judgment of $666,000.00 against the Debtor which included treble damages, as provided for in the Racketeer Influenced and Corrupt Organizations Act (RICO).

The Debtor filed a Motion to Amend Findings of Fact and Judgment Pursuant to Fed.R.Civ.P. 52(b), to Amend Judgment Pursuant to Fed.R.Civ.P. 59(e), to Set Aside Default Judgment Pursuant to Fed.R.Civ.P. 55(c), and for Relief from Judgment Pursuant to Fed.R.Civ.P. 60(b). The District Court denied the Motion to Amend Findings of Fact, stating that it had entered default against the Debtor because he had failed to answer McCart's complaint or provide the court with a good reason for his failure to answer. The District Court denied the motion to amend the amount of the judgment because the Debtor failed to provide it with any reason for such an amendment.

At some point following the litigation, the Debtor moved to Edmond, Oklahoma, and purchased a house. McCart filed the judgment in the Office of the County Clerk where the Debtor's real property is located, thus creating a lien on all of the Debtor's real property within that county. On August 1, 1997, the Debtor filed a petition for relief under Chapter 7. On October 2, 1997, McCart timely filed a complaint against dischargeability of the debt under § 523(a)(2)(A) and (B). On October 31, 1997, the Debtor filed an answer denying the allegations in the complaint and contending that the bankruptcy court was not bound by the findings of fact in the District Court default judgment. On March 31, 1998, the Debtor filed a motion to avoid McCart's lien against his homestead under 11 U.S.C. § 522(f)(1). McCart filed an objection to the motion on April 15, 1998. On April 16, 1998, McCart filed a motion for summary judgment on the complaint against dischargeability. The bankruptcy court entered an order denying the Debtor's lien avoidance motion on June 15, 1998, and entered an order granting McCart's motion for summary judgment on June 19, 1998.

## DISCUSSION

The Debtor alleges that the bankruptcy court committed several errors: (1) the court erred when it held that judicial liens against the homestead are not avoidable; (2) the court erred when it gave preclusive effect to the District Court default judgment; (3) the court failed to place the burden of proof on the party seeking summary judgment; (4) the court erred when it failed to find that trebled damages are dischargeable; and (5) the bankruptcy court's errors amount to a violation of due

process. The Court will address the lien avoidance issue first.

### Motion to Avoid Lien

In its order denying the Debtor's Motion to Avoid Lien, the bankruptcy court applied the newly amended version of Okla. Stat. tit. 12 § 706 and held that although the lien *attached* to the homestead under the statute, the Debtor could not avoid it because the lien did not impair the homestead exemption. The bankruptcy court reasoned that McCart's lien did not impair the homestead exemption since Oklahoma law provides that a judicial lienholder can not force the sale of homestead property to satisfy the lien. The Debtor contends that the bankruptcy court erred when it applied the newly amended version of Okla. Stat. tit. 12 § 706 and held that he could not avoid McCart's lien against his homestead under § 522(f)(1).

Whether a judicial lien is avoidable is a question of law reviewed *de novo. Nelson v. Barnes (In re Barnes)*, 198 B.R. 779, 781 (9th Cir. BAP 1996); *Yerrington v. Yerrington (In re Yerrington)*, 144 B.R. 96, 98 (9th Cir. BAP 1992), *aff'd without opinion*, 19 F.3d 32 (9th Cir.1994). Section 522(f)(1) provides:

> Notwithstanding any waiver of exemptions but subject to paragraph 3, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is— (A) a judicial lien. . . .

Although state law controls the availability of the homestead exemption, § 522(f) controls the availability of lien avoidance.

*David Dorsey Distrib., Inc. v. Sanders (In re Sanders)*, 39 F.3d 258 (10th Cir.1994); *Coats v. Ogg (In re Coats)*, 232 B.R. 209 (10th Cir. BAP 1999). In order for a debtor to avoid the lien under § 522(f)(1), the debtor must show: "(1) that the lien is a judicial lien; (2) that the lien is fixed against an interest of the debtor in property; and (3) that the lien impairs an exemption to which the debtor would otherwise be entitled." *Henderson v. Belknap (In re Henderson)*, 18 F.3d 1305, 1308 (5th Cir. 1994) (citing *Hart v. Hart (In re Hart)*, 50 B.R. 956, 960 (Bankr.D.Nev.1985)), *cert. denied*, 513 U.S. 1014, 115 S.Ct. 573, 130 L.Ed.2d 490 (1994).

The Debtor does not dispute that McCart holds a judicial lien. At issue is whether McCart's lien attached to the Debtor's interest in property since in order for a Debtor to avoid a judicial lien on the homestead, the lien must attach thereto. The Debtor argues that it did not attach to the homestead, while McCart maintains that it did. The controversy centers around which version of Okla. Stat. tit. 12 § 706 applies and how it is to be interpreted.

Prior to the amendment of Okla. Stat. tit. 12 § 706,[1] Oklahoma courts consistently held that a judgment lien did not attach to a judgment debtor's homestead. *See Sooner Federal Sav. & Loan Ass'n v. Mobley*, 645 P.2d 1000 (Okla.1981); *Kelough v. Neff*, 382 P.2d 135 (Okla.1963); *Gray v. Deal*, 50 Okla. 89, 151 P. 205 (Okla.1915). The reasoning was that since the Oklahoma Constitution protects the homestead from forced sale, no judgment lien could attach to it. See Okla. Const. art. XII, §§ 2 and 5; *In re Richardson*, 224 B.R.

---

1. The prior version of the statute provides:

A. Creation of Lien. A judgment to which this section applies shall be a lien on the real estate of the judgment debtor within a county only from and after a Statement of Judgment made by the judgment creditor or his attorney, substantially in the form prescribed by the Administrative Director of the Courts, has been filed in the office of the county clerk in that county.

1. Presentation of such Statement of Judgment and tender of the filing fee, shall, upon acceptance by the county clerk, constitute filing under this section.

2. A lien created pursuant to this section shall only affect the real estate of judgment debtors whose names appear in the Statement of Judgment.

Okla. Stat. tit. 12,706 (1996).

804, 805–06 (Bankr.N.D.Okla.1998). In 1997, the Oklahoma Legislature amended Okla. Stat. tit. 12§ 706. The new version, effective November 1, 1997, unambiguously states that judicial liens attach to all real property of a judgment debtor, including the homestead. It provides:

A lien created pursuant to this section shall affect and attach to all real property, including the homestead, of judgment debtors whose names appear in the Statement of Judgment; however, judgment liens on a homestead are exempt from forced sale pursuant to Section 1 of Title 31 of the Oklahoma Statutes and Section 2 of Article XII of the Oklahoma Constitution.

Okla. Stat. tit. 12, § 706(B)(2) (supp.1997).

■■■ The Debtor contends that the bankruptcy court erred when it applied the *amended* statute to his case since he filed his petition on August 17, 1997, and the amended statute became effective on November 1, 1997. This Court agrees that the version of Okla. Stat. tit. 12 § 706 as of the filing date controls in this case. In general, a statute or its amendment will only have prospective effect unless it clearly provides otherwise. *Harris v. Freeman*, 881 P.2d 104, 106–07 (Okla.Ct.App. 1994) (citing *Alldredge v. Oklahoma Firefighters Pension and Retirement Bd.*, 816 P.2d 580 (Okla.Ct.App.1991)); see also *Quinlan v. Koch Oil Co.*, 25 F.3d 936 (10th Cir.1994). Nothing in § 706 implies that the legislature meant for it to be applied retroactively. Since the Debtor filed his petition before November 1, 1997, the pre-amendment language of the statute applies and the lien did not attach to the homestead. Where the lien does not attach to the homestead, there is nothing to avoid. *See David Dorsey Distrib., Inc. v. Sanders (In re Sanders)*, 39 F.3d 258, 262 (10th Cir.1994) ("[W]hen state law does not allow a lien to attach to exempt property, § 522(f) is superfluous and without application."). Therefore, McCart's lien does

not attach to the Debtor's homestead and he cannot avoid it under § 522(f)(1). While the bankruptcy court erred in its application and interpretation of Okla. Stat. tit. 12§ 706 and § 522(f), we nonetheless affirm its order as it reached the correct result. See *Coats v. Ogg (In re Coats)*, 232 B.R. 209 (10th Cir. BAP 1999).

Thus, while the bankruptcy court erred in holding that McCart's judgment attached to the Debtor's homestead, the result is the same.[2] The Debtor is not entitled to avoid the lien.

## Summary Judgment

The Debtor challenges the bankruptcy court's grant of summary judgment on McCart's dischargeability complaint on a number of grounds. The bankruptcy court found that the District Court default judgment was sufficient to support a grant of summary judgment holding McCart's claim to be nondischargeable under 11 U.S.C. § 523(a)(2)(A) and (B).

■■ The grant or denial of summary judgment is reviewed *de novo*. The Court applies the same standard used by the bankruptcy court under Federal Rule of Civil Procedure 56, as made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056. *See, e.g., United States v. Sackett*, 114 F.3d 1050 (10th Cir.1997); *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997); *Benavidez v. City of Albuquerque*, 101 F.3d 620, 623 (10th Cir. 1996); *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir.1995); *Meredith v. Beech Aircraft Corp.*, 18 F.3d 890, 893 (10th Cir.1994). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying

---

**2.** See *Coats v. Ogg (In re Coats)*, 232 B.R. 209 (10th Cir. BAP 1999), for a discussion of what

constitutes impairment of a debtor's homestead exemption.

this standard, the Court examines the factual record in the light most favorable to the nonmoving party. *See Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir.1995). The party opposing summary judgment may not rely on mere allegations or denials in its pleadings or briefs, but must identify specific and material facts for trial and significant probative evidence supporting the alleged facts. *Burnette v. Dresser Indus., Inc.*, 849 F.2d 1277, 1284 (10th Cir.1988). There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538(1986). "If there is no genuine issue of material fact in dispute, then we next determine if the substantive law was correctly applied by the [trial court]." *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995) (citation omitted).

The Debtor does not dispute McCart's rendition of the facts in either his trial court or his appellate court brief. While he asserts that McCart received settlements from other defendants totaling more than $200,000.00, the Debtor failed to provide the bankruptcy court with any evidence in support of his allegations. McCart, in compliance with the Rule, provided copies of the District Court default judgment, pleadings, and affidavits in support of the motion for summary judgment. However, the Debtor did not meet his burden. Neither his brief nor his affidavit identify specific and material facts for trial and significant probative evidence support-

ing those alleged facts. Therefore, there were no genuine issues of material fact.

## Collateral Estoppel

The bankruptcy court held that the default judgment against the Debtor collaterally estopped him from relitigating the issues of fraud under 11 U.S.C. § 523(a)(2)(A) and (B).[3]

The doctrine of collateral estoppel, also known as issue preclusion, bars the relitigation of issues that have been tried in a prior lawsuit. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). Collateral estoppel applies to dischargeability proceedings in bankruptcy. *See Grogan v. Garner*, 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Federal principles of collateral estoppel apply to prior judgments that are rendered by a federal court. *Murdock v. Ute Indian Tribe*, 975 F.2d 683, 687 (10th Cir.1992), *cert. denied*, 507 U.S. 1042, 113 S.Ct. 1879, 123 L.Ed.2d 497 (1993); *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210, 214 (3d Cir.1997) (citing *Heiser v. Woodruff*, 327 U.S. 726, 732, 66 S.Ct. 853, 90 L.Ed. 970 (1946); *Grogan v. Garner*, 498 U.S. 279, 284, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). In order for collateral estoppel to apply, the following elements must be present: "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised

---

3. 11 U.S.C. § 523(a)(2) provides:
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
 (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
 (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
 (B) use of a statement in writing—
 (i) that is materially false;
 (ii) respecting the debtor's or an insider's financial condition;
 (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
 (iv) that the debtor caused to be made or published with intent to deceive....

had a full and fair opportunity to litigate the issue in the prior action." *Frandsen v. Westinghouse Corp.*, 46 F.3d 975, 978 (10th Cir.1995)(quotation omitted). A court's application of collateral estoppel is reviewed *de novo*. *United States v. Rogers*, 960 F.2d 1501, 1507 (10th Cir.) (citing *Hubbert v. City of Moore*, 923 F.2d 769, 772 (10th Cir.1991)), *cert. denied*, 506 U.S. 1035, 113 S.Ct. 817, 121 L.Ed.2d 689 (1992).

■ All of the elements of collateral estoppel are present. First, the District Court and the bankruptcy court litigation involved the same issue–fraud. Secondly, those issues were determined by a valid and final judgment.[4] Thirdly, the Debtor was a party to the prior litigation. Finally, the Debtor had a full and fair opportunity to litigate the issue of fraud. *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210 (3d Cir.1997); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir.1995); *FDIC v. Daily (In re Daily)*, 47 F.3d 365 (9th Cir.1995).

The Debtor contends that the bankruptcy court erred when it granted preclusive effect to the District Court's findings in the default judgment since it was entered by default. The Debtor's argument implies that he did not have notice of the show cause hearing that resulted in the entry of default against him. On the contrary, the record reflects that the Debtor received notice of the hearing and filed a letter in response. That letter did not comply with court rules in spite of the District Court's repeated warnings that a failure to comply with court rules would result in a default judgment against the Debtor. At the conclusion of the hearing, the District Court made specific findings of fact regarding the Debtor's conduct and its reasons for entering the default judgment against him. Therefore, the Debtor's argument is without merit and will not be considered further.

Of all the assignments of error, the Debtor argues most strenuously against the bankruptcy court's determination that the issue of fraud was actually litigated in the District Court proceeding.

At the outset, it is apparent that the Debtor is twisting the term "default judgment." In this case, the entry of a "default judgment" against the debtor was not the traditional "default" situation where a judgment is entered against a defendant who has been served but has failed to appear or plead. Such a default is always subject to collateral attack on a number of grounds.

Here the default was entered as a sanction where the debtor was properly served, filed an initial answer and given every opportunity to defend himself. He chose, however, to "assiduously pursue a policy of obfuscation" to frustrate the judicial process. (*See* Appellant's App. at 9.) He had every opportunity to litigate the fraud claims against him. This is not a default judgment in the sense of the cases he cites. Allowing him to relitigate the District Court judgment would reward his misbehavior. The bankruptcy court properly gave preclusive effect to the District Court judgment and then simply applied § 523(a)(2)(A) and (B) in granting summary judgment.

The Debtor cites Tenth Circuit cases holding that a default judgment does not have preclusive effect. (*See* Appellant's Opening Br. at 9.) In general, none of those cases fit the facts here. In addition to applying state collateral estoppel principles to state court default judgments, the majority of the cases he cites involved a defendant who failed to answer the plaintiff's complaint or appear in court. The remaining cases involve defendants who consented to a default judgment because they could not afford counsel, had default granted against them for evading three

---

**4.** The Court notes that the Debtor has not contested the validity or finality of the District Court judgment against him.

opportunities to try the case, had a partial default entered against them for the plaintiff's claims that they did not contest, or had a default judgment entered against them after the court entertained only the plaintiff's evidence. *See International Surplus Lines Ins. Co. v. University of Wyo. Research Corp.*, 850 F.Supp. 1509 (D.Wyo.1994), *aff'd*, 52 F.3d 901 (10th Cir. 1995); *Alvarado v. Kallmeyer (In re Kallmeyer)*, 143 B.R. 271 (Bankr.D.Kan.1992); *National Union Fire Ins. Co. v. Boyovich (In re Boyovich)*, 126 B.R. 348 (Bankr. W.D.Wash.1991); *Pacific Energy & Minerals, Ltd. v. Austin (In re Austin)*, 93 B.R. 723 (Bankr.D.Colo.1988). Here, the District Court granted McCart a default judgment against the Debtor not because he failed to appear at the show cause hearing, but as a sanction for substantial abuse of the discovery process.

Several Circuit Courts have held that a default judgment entered against a defendant for abuse of the discovery process has preclusive effect in subsequent litigation. *Wolstein v. Docteroff (In re Docteroff)*, 133 F.3d 210 (3d Cir.1997); *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir.1995); *FDIC v. Daily (In re Daily)*, 47 F.3d 365 (9th Cir.1995) (applying federal principles of collateral estoppel). See also *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17 (4th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 298, 139 L.Ed.2d 230 (1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir.1996) (applying state court principles of collateral estoppel). These Courts held that the "actually litigated" element of collateral estoppel was present because the defendants had a full and fair *opportunity* to actually litigate the issues in the prior action. Here, the Debtor had *every* opportunity to litigate the issues and many warnings that the District Court would enter a default judgment against him if he did not comply with court rules.

Nevertheless, the Debtor cites numerous cases in support of his position that he did not have an opportunity to actually litigate any of the issues in the prior proceeding. He argues that *Marlee Electronics Corp. v. Antonakis (In re Antonakis)*, 207 B.R. 201 (Bankr.E.D.Cal.1997) supports his position. However, the only similarity between *Antonakis* and the instant case is that the plaintiff sued Antonakis for fraud and RICO violations and the District Court entered a default judgment against the defendant.[5] The default judgment was not the result of the Debtor's misconduct during the prior federal court proceeding. In *Antonakis*, the District Court entered a default judgment against the Debtor for failure to file an answer to the amended complaint or otherwise defend the lawsuit. The Court stated: "[b]efore the suit reached the point requiring the defendant to answer, the District Court granted his counsel's request to withdraw for nonpayment. Left without counsel, the Debtor merely acquiesced in a default." 207 B.R. at 204. Clearly *Antonakis* is readily distinguishable from the instant case.

The Debtor also contends that *M & M Transmissions, Inc. v. Raynor (In re Raynor)*, 922 F.2d 1146 (4th Cir.1991), bears a "substantial, even uncanny, similarity" to the instant case. (*See* Appellant's Opening Br. at 19.) However, the facts in *Raynor* form a striking contrast to those in the instant case. In *Raynor*, the Defendant's counsel did not file a formal appearance or an answer. Raynor did not have any contact with his attorney in the six months preceding trial. On the day of the trial, his attorney moved to withdraw from the case. The state court granted the motion and entered a default judgment against Raynor, who had no notice of the trial. Raynor did not learn of the default judgment or his attorney's withdrawal until he received a motion to claim exempt property. The only similarity between *Raynor*

---

**5.** In the interest of economy, the Court will not list the other counts alleged against Antonakis.

and the instant case is that Raynor obtained counsel and filed a motion for relief from judgment with the trial court, which the court denied.

In the instant case, the Debtor's attorney entered an appearance and filed an answer, then withdrew from the case early in the proceedings. The District Court advised the Debtor not to proceed *pro se* since *failure to comply with the rules of* procedure could lead to a default judgment against him.[6] In spite of repeated admonishments from the District Court and McCart's counsel, the Debtor refused to hire new counsel, stating that God was his attorney. The Debtor did not file an answer to the McCart's amended complaint or comply with discovery requests. He also absconded with the original copy of his deposition and refused to return it. In response to the District Court's order to show cause why a default judgment should not be entered against him as a sanction, the Debtor filed a letter that did not comply with court rules. In the letter, the Debtor alleged that McCart's lawyer had been lying about him, that McCart told his family he should not be a party to the suit, and that his family knew that he was completely blameless. The District Court entered a default judgment against him as a sanction for his misconduct.

In light of his misconduct in the District Court case, the Debtor can not claim that he did not have a full and fair opportunity to litigate the issues in the prior proceeding. The Ninth Circuit Court of Appeals' statement in *Daily* is particularly relevant here:

> The judgment entered in the RICO action was not an ordinary default judgment. Daily did not simply decide the burden of litigation outweighed the advantages of opposing the FDIC's claim and fail to appear. He actively participated in the litigation, albeit obstructively, for two years before judgment was entered against him. A party who deliberately precludes resolution of factual issues through normal adjudicative procedures may be bound, in subsequent, related proceedings involving the same parties and issues, by a prior judicial determination reached without completion of the usual process of adjudication. In such a case the "actual litigation" requirement may be satisfied by substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so.

*FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir.1995) (footnote omitted). Like *Daily*, the District Court's default judgment against the Debtor was no "ordinary" default judgment. The Debtor had a reasonable opportunity to obtain counsel and defend himself. He did not do so, in spite of admonishments from the District Court and McCart's counsel. The Debtor engaged in a course of misconduct designed to hinder the judicial process. Therefore, this Court holds that the bankruptcy court did not err when it held that the federal court default judgment against the Debtor collaterally estopped him from relitigating the issue of fraud. To hold to the contrary would reward the Debtor for his misconduct and encourage others to abuse the judicial system as he did.

### Treble Damages

■ The Debtor contends that the bankruptcy court erred when it held that the District Court's award of treble damages under RICO (18 U.S.C. § 1961–68)[7]

---

6. In light of these admonishments, the Debtor's argument that collateral estoppel should not apply since he was *pro se* is patently ridiculous. Moreover, the Tenth Circuit has expressly rejected the argument that collateral estoppel is not applicable to *pro se* litigants. *Nelson v. Tsamasfyros (In re Tsamasfyros)*, 940 F.2d 605, 607 (10th Cir.1991).

7. 18 U.S.C. § 1964(c) provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any

was nondischargeable. He also argues that McCart is not entitled to more than the actual amount lost. The Supreme Court rejected the same arguments in *Cohen v. De La Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), and held that § 523(a)(2)(A) prevents the discharge of all liability arising from fraud, including an award of treble damages. 523 U.S. 213, 118 S.Ct. at 1215. The Supreme Court stated:

> As petitioner acknowledges, his gloss on § 523(a)(2)(A) would allow the debtor in those situations to discharge any liability for losses caused by his fraud in excess of the amount he initially received, leaving the creditor far short of being made whole. And the portion of a creditor's recovery that exceeds the value of the money, property, etc., fraudulently obtained by the debtor—and that hence would be dischargeable under petitioner's view—might include compensation not only for losses brought about by fraud but also for attorney's fees and costs of suit associated with establishing fraud. Those sorts of results would not square with the intent of the fraud exception. As we have observed previously in addressing different issues surrounding the scope of that exception, it is "unlikely that Congress ... would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud." *Grogan, supra*, at 287, 111 S.Ct. at 659–660.

523 U.S. 213, 118 S.Ct. at 1218–19 (citation omitted). In light of the Supreme Court's holding that treble damages are nondischargeable under § 523(a)(2)(A), the bankruptcy court did not err when it held that the treble damages award against the Debtor is nondischargeable.

### Due Process

 Finally, the Debtor claims, without citing any authority, that the bankruptcy court's decision has deprived him of due process. The Ninth and Eleventh Circuits have addressed this issue in *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 369 (9th Cir.1994), and *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1325 (11th Cir.1995).

*Daily* and *Bush* are directly on point. The facts in both cases are similar to the instant case. In *Daily* and *Bush*, the creditors filed dischargeability actions against the Debtors under § 523(a)(2)(A). Both creditors had obtained default judgments against the Debtors in prior federal court fraud proceedings. In *Daily*, the FDIC filed a civil suit against the Debtor under RICO. The creditor unsuccessfully sought discovery for two years. After a full briefing and a hearing, the District Court entered a default judgment against Daily for his "deliberate, dilatory course of conduct" and ordered all allegations in the complaint deemed admitted. In *Bush*, the District Court granted a default judgment against him as a sanction for failure to produce requested documents, failure to produce trial exhibits, failure to appear for his deposition, and failure to appear at a pretrial conference.

The creditors filed motions for summary judgment in the dischargeability proceedings contending that the default judgments had preclusive effect as to the issue of fraud. The bankruptcy courts granted the creditors' motions holding that because of the extraordinary circumstances surrounding the default judgments, they precluded relitigation of the fraud issue. Both Circuit Courts affirmed the bankruptcy court's holding and reasoning. They also held that the Debtor's due process rights were not violated when the bankruptcy court granted preclusive effect to the default judgment.

This Court, like the Court in *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319 (11th Cir.1995), finds the reasoning in *Daily* highly persuasive.

---

appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. . . .

Due process is not violated by a court's entry of a default judgment or other sanction against a party for refusal to cooperate with discovery. *See Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v. Rogers,* 357 U.S. 197, 209–10, 78 S.Ct. 1087, 1094–95, 2 L.Ed.2d 1255 (1958). The court's action presumes, in essence, that defendant's conduct is "but an admission of the want of merit in the asserted defense." *Id.* at 210, 78 S.Ct. at 1095 (internal quotations omitted). Nor is due process violated if the defendant is later held to the consequences of such a judgment in a bankruptcy discharge proceeding. It is implicit in the doctrine of collateral estoppel that, where a party has been accorded a full and fair opportunity to litigate an issue in a prior proceeding, due process is not violated by denying the party a further opportunity to litigate the same issue in a subsequent proceeding. *See Blonder–Tongue Labs., Inc. v. Univ. of Ill. Foundation,* 402 U.S. 313, 328–29, 91 S.Ct. 1434, 1442–43, 28 L.Ed.2d 788 (1971).

47 F.3d at 369. Due process does not guarantee multiple bites of the same apple. Instead, it guarantees the right to notice and an opportunity to be heard. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Clearly the Debtor has had both and can not use due process to evade responsibility for his actions.

## CONCLUSION

The bankruptcy court's rulings on the motion for lien avoidance and the motion for summary judgment are AFFIRMED.