**FILED**

**U.S. Bankruptcy Appellate Panel
of the Tenth Circuit**

**February 4, 2016**

**Blaine F. Bates
Clerk**

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

IN RE JERRY GRANT,

Debtor.

JUNE CLABAUGH,

Appellant,

v.

JERRY GRANT,

Appellee.

BAP No.WO-15-035

Bankr. No. 14-13199
Chapter 7

OPINION[*]

Appeal from the United States Bankruptcy Court
for the Western District of Oklahoma

Submitted on the briefs:[1]

Before **KARLIN**, Chief Judge, **CORNISH**, and **MICHAEL**, Bankruptcy Judges.

**KARLIN**, Chief Judge.

This case involves a debtor who unlawfully converted over $1,000,000 worth

---

[*]     This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion.  10th Cir. BAP L.R. 8026-6.

[1]     Pursuant to this Court's December 28, 2015 Order [Bap ECF No. 26], the Court has determined unanimously that oral argument would not significantly aid in the determination of this appeal. *See* Fed. R. Bankr. P. 8019(b)(3*).  The case is therefore submitted without oral argument.

of property and was denied his discharge as a result of failing to satisfactorily account for the loss of the property. The issue presented is whether a bankruptcy court has the equitable power to allow the judgment lien of the true owner of the converted property to impair that debtor's homestead exemption. Because the bankruptcy court, relying upon a recent decision of the United States Supreme Court, properly held it does not have that authority, we affirm.

## I. Background

In June 2005, Appellant June Clabaugh rented a safety deposit box from First American Bank and Trust ("First American") and placed in the box a large coin collection and a variety of jewelry and family heirlooms. Some of the coins were contained in a prescription bottle bearing the name "Ar. Jones," which referred to Artibus Jones, Clabaugh's deceased mother. Clabaugh paid the box rent each year, but never attempted to access the contents until 2010.

In 2008, First American accidently expunged its safety deposit box ownership records. In an attempt to identify the owner of Clabaugh's box, First American opened it and found the only distinguishing information was the bottle holding the coins with the name "Ar. Jones." After searching its records, First American found a closed account in the name of Arley Jones. Their records reflected that Jerry Grant, the debtor in this case and the nephew of Arley Jones, had previously been appointed personal representative of Arley Jones' estate, and had closed the account upon his death.

First American contacted Grant, who falsely represented that he was still the personal representative of the Arley Jones' estate.[2] At First American's request, Grant produced letters of administration dated May 2006 appointing him as

---

[2]     Opinion at 7, *in* Appellant's App. at 111.

personal representative. What Grant failed to disclose was that he had long since been released as the estate's personal representative. First American, unaware of this fact, transferred the contents of the safety deposit box to Grant.

In 2010, when Clabaugh accessed the box and discovered the contents missing, she confronted First American. First American contacted Grant, who then claimed he had sold the contents of the safety deposit box for less than $500. He admitted that, although he was the former personal representative of his uncle's estate, he was not entitled to any inheritance from the estate. Grant was also not related to, and did not know, Artibus Jones or June Clabaugh.

When First American did not reimburse her for the value of the property it had incorrectly given to Grant, Clabaugh sued First American in Oklahoma state court, seeking judgment for the value of the missing property. She added Grant as a defendant when she learned his identity. Clabaugh settled with First American, but proceeded to trial against Grant. Clabaugh's expert witness testified the contents of the box were valued between one and two million dollars. The jury found Grant liable to Clabaugh for conversion and fraud, and awarded Clabaugh $1.25 million in damages against Grant. Grant appealed to the Oklahoma Court of Civil Appeals. That court reversed the jury's determination regarding fraud, but affirmed the conversion judgment and the damage award.[3]

Clabaugh recorded her judgment in the Oklahoma County Clerk's office in December 2012.[4] Her recorded judgment attached by operation of state law to

---

[3] *Clabaugh v. Grant*, 347 P.3d 1044 (Okla. Civ. App. 2014), *reh'g denied* (Aug. 5, 2014), *cert. denied* (Mar. 30, 2015). The Oklahoma Court of Civil Appeals set aside the fraud claim because the evidence did not support a finding that Grant had made false statements to Clabaugh.

[4] Motion to Avoid Judicial Lien on Real Estate at 1, *in* Appellant's App. at 89.

various tracts of real property that Grant owned in Oklahoma County. One of those properties was Grant's home on 59th Street where he had continuously lived for over twenty years (the "Residence"). When Grant filed a Chapter 7 bankruptcy in July 2014, he listed the Residence as his exempt homestead on Schedule C.

Clabaugh filed an adversary proceeding to determine dischargeability of the debt Grant owed pursuant to 11 U.S.C. § 523(a)(6),[5] claiming Grant had willfully and maliciously converted the contents of the safe deposit box. She also objected to his general discharge under § 727(a)(5) on the basis that he had failed to satisfactorily explain the loss of the contents of the safety deposit box or proceeds therefrom.

Clabaugh also objected to Grant's homestead exemption, arguing that Grant used the Residence for business purposes and claiming that, under Oklahoma law, a homestead exemption amount cannot exceed five thousand dollars where twenty-five percent of the total square foot area of the property for which a homestead exemption is claimed is used for business purposes. Grant responded to Clabaugh's objection, maintaining that he had never used the Residence for business purposes. Ultimately, Clabaugh withdrew her objection.

After Clabaugh withdrew her objection to the homestead exemption, Grant filed a motion to avoid Clabaugh's judicial lien on his home (the "Avoidance Motion"). The Avoidance Motion noted that the lien was a judicial lien against Grant's homestead, and because that lien impaired his homestead exemption, it could be avoided pursuant to § 522(f). Clabaugh objected ("the Avoidance Objection").

At the hearing on the Avoidance Motion, Clabaugh essentially argued that

_____

[5]     All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

because Grant had unlawfully converted her property, the court, as a court of equity, could allow him to live in the house as long as he desired, but that the court should decline to entirely avoid her lien and instead preserve the lien until he died or elected to sell his home. Relying on the recent Supreme Court decision, *Law v. Seigel*,[6] the bankruptcy court found that because Clabaugh's lien was a judicial lien that attached to and impaired Grant's admittedly exempt homestead, it had no choice but to avoid her lien. The court further noted that the Bankruptcy Code does not confer a "general equitable power in bankruptcy courts to deny exemptions based on a debtor's bad-faith conduct of . . . fraudulent concealment of an [exempt] asset."[7] The bankruptcy court specifically found that "bad-faith conduct sufficient to deny a discharge under [§] 727 is not a basis for denying a homestead exemption."[8]

Clabaugh now appeals the Avoidance Order, arguing that Grant "is asking the Bankruptcy Court to allow him to use the bankruptcy code to build a habitation of injustice to shield a bandit."[9] Clabaugh asserts that the bankruptcy court erred in avoiding her judgment lien because (1) Grant's homestead exemption was not truly impaired by her lien; (2) Grant was not eligible to be a debtor under the Code; (3) Clabaugh's debt is nondischargeable; and (4) given the facts and circumstances surrounding Clabaugh's lien, equity precludes avoidance of the lien.

---

[6]     134 S.Ct. 1188 (2014).

[7]     Tr. at 8, *in* Appellant's App. at 274.

[8]     Tr. at 12, *in* Appellant's App. at 278. The Court later granted summary judgment in favor of Clabaugh on her § 727 claim, deemed the § 523 claim moot, and denied Grant a discharge.

[9]     Appellant's Br. at 14.

## II. Standard of Review

The bankruptcy court's findings regarding the elements of § 522(f) are factual determinations. We review the bankruptcy court's findings of fact for clear error.[10] Whether a judicial lien is avoidable, as impairing an exemption to which a debtor would otherwise be entitled, is a question of law.[11] We review the bankruptcy court's conclusions of law *de novo*.[12]

## III. Discussion

## A. Oklahoma Homestead Exemption

A "homestead exemption is presumed to be valid, and the objecting [party] bear[s] the initial burden of producing evidence to rebut the presumption."[13] Grant listed the Residence as exempt on Schedule C, and Clabaugh objected to that exemption on the basis Grant used a portion of the Residence for business purposes. But she then withdrew her objection. Because she did not file, timely or otherwise, any other additional objections to the homestead exemption, the exemption is valid.[14]

When Grant later filed his motion to avoid Clabaugh's lien, Clabaugh properly and

---

[10]    *Copper v. Lemke (In re Lemke)*, 423 B.R. 917, 919 (10th Cir. BAP 2010) ("We review the factual findings of the bankruptcy court for clear error and its legal findings *de novo*.") (*citing Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th  Cir. 1996)).

[11]    *In re Parsons*, 233 B.R. 176, *2 (10th Cir. BAP 1999).

[12]    *McCart v. Medline Serv. Corp. (In re Jordana)*, 232 B.R. 469, 473 (10th Cir. BAP 1999), *aff'd on other grounds*, 216 F.3d 1087 (10th Cir. 2000).

[13]    *In re Robinson*, 295 B.R. 147, 152 (10th Cir. BAP 2003).

[14]    *Taylor v. Freeland & Kronz,* 503 U.S. 638, 642-44 (1992) (holding that § 522(*l*) and Bankruptcy Rule 4003(b) bar contesting the validity of an exemption after the 30-day period for objecting has expired where no extension has been granted, even though a valid objection could have been made if the party acted promptly).

expressly conceded the validity of the homestead exemption.[15] Notwithstanding this record, Clabaugh now raises on appeal for the first time that Grant is not entitled to the Oklahoma homestead exemption because he is single (claiming the exemption is only for families). Because Clabaugh is precluded from contesting the exempt status of the Residence,[16] the bankruptcy court did not err in finding the Residence exempt—the first element required by § 522(f) to avoid a judicial lien.

## B. Impairment of Exemption

Clabaugh next argues that the bankruptcy court erred in avoiding her judgment lien under § 522(f) because she claims her lien does not actually impair Grant's homestead exemption because of the operation of the Oklahoma exemption statute. Her argument is essentially this: (1) under Oklahoma law, while her lien attaches, she cannot foreclose on it until Grant moves or otherwise tries to sell the Residence; and (2) because her lien thus does not deprive him of a place to live, it does not really impair the exemption.

Pursuant to § 522(f)(1)(A), a judicial lien, other than one securing alimony,

---

[15] The record clearly indicates that Clabaugh did not contest the homestead exemption. Tr. at 6, *in* Appellant's App. at 272. "We're not arguing that [Grant] doesn't have an exemption." Tr. at 8, *in* Appellant's App. at 274. "I would not even begin to say that [Grant's Residence] is not exempt. The Court has already ruled . . . [t]hat the [Residence] is exempt under Oklahoma law." Tr. at 9, *in* Appellant's App. at 275.

[16] The Tenth Circuit has held that additional legal theories addressed for the first time on appeal fall into two categories: waiver and forfeiture. Clabaugh's failure to specifically raise this issue below would constitute a forfeiture, which this Court may hear on appeal, but only reverse the findings of the bankruptcy court "if failing to do so would entrench a plainly erroneous result." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011). Clabaugh has not met her burden to show that such error exists. Even if an objection had been filed and the issue preserved on appeal, she would not have prevailed since Oklahoma's homestead exemption does not require the home be occupied by a family but instead only requires that the home be the principal residence of "a person." Okla. Stat. tit. 31 § 1.

maintenance, or support obligations, may be avoided if it impairs an exemption to which the debtor would otherwise be entitled, including an exemption "under . . . [the] State . . . law that is applicable on the date of the filing of the petition."[17] Before the bankruptcy court, neither party contested that the lien is a judicial lien created under state law, that Oklahoma law controls the availability of the homestead exemption,[18] or that the Residence is exempt under Oklahoma law.[19] Further, while state law controls the availability of the homestead exemption, federal bankruptcy law controls whether a debtor can avoid a lien as impairing the state law homestead exemption to which he or she would otherwise be entitled.[20]

This Court has already ruled, in *In re Coats*,[21] that judicial liens in Oklahoma that attach to an exempt homestead impair the exemption and can thus be avoided under § 522(f), notwithstanding the fact that such liens cannot be foreclosed under state law while the property remains the debtor's homestead.[22] For example, if left unavoided, Clabaugh's lien would prevent Grant from selling his Residence and buying another with the proceeds. This would impair his ability to retain a roof over

---

[17]    11 U.S.C. § 522(b)(3).

[18]    Clabaugh argued on appeal that Oklahoma has opted out of the homestead exemption found in section § 522(f). This is not accurate as § 522(b)(3)(A) specifically incorporates exemptions under applicable state law, which would include Oklahoma state law.

[19]    Tr. at 6, *in* Appellant's App. at 272.

[20]    *McCart v. Medline Serv. Corp. (In re Jordana)*, 232 B.R. 469, 473 (10th Cir. BAP 1999), *aff'd on other grounds*, 216 F.3d 1087 (10th Cir. 2000).

[21]    232 B.R. 209 (10th Cir. BAP 1999).

[22]    *Id*. at 214. Regrettably, Clabaugh's opening brief failed to even mention this controlling precedent. Her reply brief cited this case, but for a different proposition.

his head—something the Oklahoma legislature deemed appropriate when it enacted the homestead law. Because we are bound by the *Coats* decision (and agree with it), we hold that the bankruptcy court did not err when it found that Grant's exemption was impaired and avoided the lien pursuant to § 522(f).

## C.  Prepetition Bad Faith Conduct

Clabaugh argues on appeal that Grant is ineligible to be a debtor under the Bankruptcy Code as a result of his prepetition bad faith conduct and, as such, the bankruptcy court should not have even reached the issue of lien avoidance. As a threshold issue, Clabaugh has forfeited this argument because she did not raise this issue with the bankruptcy court.[23] There is nothing in the record to suggest Clabaugh, instead of objecting to discharge, tried to get Grant's petition dismissed for lack of eligibility or for any other reason.

Even if this Court were to consider the issue, the Supreme Court has very recently held, in *Law v. Siegel*,[24] that the Bankruptcy Code, in general, and § 522, in particular, does not give a bankruptcy court discretion to deny an exemption on a ground not specified in the Code. It further held that bad faith conduct, including conduct sufficient to deny a discharge, is not a ground Congress elected to specify in the Code.[25]

Clabaugh suggests we should look past *Law v. Siegel's* clear mandate by

---

[23]     *See infra* note 16 (Clabaugh again did not meet her burden to show that an error exists sufficient to allow review of an issue she failed to initially raise).

[24]     *Law v. Siegel*, 134 S.Ct. 1188, 1196-97 (2014).

[25]     *Id.*

considering another recent Supreme Court decision, *Harris v. Viegelahn*,[26] which she claims would authorize a bankruptcy court "to ignore plain language in the bankruptcy code where there is an atypical case."[27] But *Harris* had nothing to do with allowance of exemptions, and we thus decline to consider it when *Law v. Siegel* is directly on point.

As a result, we agree with the bankruptcy court that even when an underlying debt is nondischargeable, neither the Bankruptcy Code in general, nor § 522(f) in particular, restricts or limits the debtor's right to avoid a judicial lien emanating from that nondischargeable debt.[28] We also agree that the Code does not confer a general, equitable power on bankruptcy courts to deny a homestead exemption, even when a debtor has engaged in conduct sufficient to deny a discharge.[29] Accordingly, the bankruptcy court correctly concluded it did not have the discretion to withhold exemptions based on equitable considerations and did not err in avoiding the lien pursuant to § 522(f).

## V. Conclusion

We affirm the bankruptcy court's decision granting the Avoidance Motion because Clabaugh's judicial lien impairs Grant's homestead exemption and because neither Grant's bad faith conduct nor the debt's nondischargeabililty under § 727 precludes avoidance of the lien.

---

[26]     135 S.Ct. 1829 (2015).

[27]     Appellant's Br. at 13.

[28]     *In re Liming,* 797 F.2d 895, 898 (10th Cir. 1986) ("As the bankruptcy court correctly noted, a debtor may bring an action to avoid a lien under . . . § 522(f) even if the debt secured by that lien is declared nondischargeable.").

[29]     *Siegel*, 134 S.Ct. at 1196-97.