In re Jay BUSCH, Debtor.

Jay Busch, Appellant,

v.

Cindy Busch, also known as Cindy Hancock, and Kevin R. Anderson, Trustee, Appellees.

BAP No. UT–02–087.
Bankruptcy No. 02T–27006.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

June 6, 2003.

Scott B. Mitchell, Salt Lake City, Utah, for Appellant.

Steven C. Tycksen (S. Dayn Kelson with him on the brief), of Zoll & Tycksen, L.C., Murray, Utah, for Appellee, Cindy Busch.

Before PUSATERI [1], CORNISH, and NUGENT, Bankruptcy Judges.

## OPINION

CORNISH, Bankruptcy Judge.

Jay Busch appeals an Order of the United States Bankruptcy Court for the District of Utah that granted a Motion for Relief From Stay made by Appellee, Cindy Busch.[2] Jay Busch argues that the bank-

for the District of Kansas, retired on May 30, 2003. He fully considered this matter and approved the decision before his retirement.

2. In all bankruptcy court captions, the Appellee is identified by the name "Cindy Busch." However, in several proceedings in this case, the Appellee was identified and referred to as Cindy Hancock, formerly Cindy Busch.

1. The Honorable James A. Pusateri, Bankruptcy Judge, United States Bankruptcy Court

ruptcy court abused its discretion when it lifted the stay to permit a Utah state court to determine whether his failure to pay a second mortgage as required by a divorce order terminated his equity in the former marital home. We affirm.

### I. Background

Appellant Jay Busch ("Busch") and Appellee Cindy Busch ("Appellee") obtained a Decree of Divorce in January 2000 ("Decree"). The Appellee was awarded the family home. In paragraph eleven of the Decree, the divorce court ordered Busch to pay the second mortgage on the family home. In paragraph twelve, the divorce court awarded him "a lien on the home equal to $14,977.50 payable to [Busch] if [Appellee] remarries, cohabits, sells the home, or when the minor child reaches age 18." Appellant's App. at 59. Appellee remarried in September 2000.

On July 28, 2000, Busch filed his first Chapter 13 bankruptcy petition ("First Case"). During the course of the First Case, the bankruptcy court found that the second mortgage obligation was in the nature of alimony or support as delineated in 11 U.S.C. § 523(a)(5)(B)[3] and therefore had priority status under § 507(a)(7)(B). The bankruptcy court found further that such priority status would continue only with respect to payments made before the parties' minor child turned eighteen in August 2004. After that time, any further amount owing on the obligation would become a general unsecured debt. The bankruptcy court then lifted the stay to allow the Appellee to proceed in state court for clarification as to whether payment of the Debtor's equity interest was due in full. This was triggered by Appellee's remarriage. Appellee further sought clarification as to whether payment in full of the second mortgage was a precondition to his right to receive the equity in the former marital home.

In May 2001, the Utah state court held that Busch's "obligation to pay the second mortgage is a reasonable pre-condition to his right to receive his equity in the marital home," and further found that Appellee's "obligation to pay [Busch] his equity in the marital home shall be deferred until he has satisfied the second mortgage in full" (hereinafter, referred to as "Modification Order"). Appellant's App. at 84. After the Utah state court ruling, upon Busch's request, the Chapter 13 case was dismissed.

Within the next day or so, Busch filed a second Chapter 13 case, which was assigned to a different bankruptcy judge ("Second Case"). The second bankruptcy judge agreed with the first bankruptcy judge that the payments on the second mortgage were in the nature of support and a priority claim only until the minor child's eighteenth birthday. In April 2002, the Second Case was dismissed.

On October 2, 2002, Busch filed a third Chapter 13 petition ("Third Case"). In his schedules, he claimed a $15,000 homestead exemption on his equity interest in the former family home. On October 3, 2002, Busch filed a Chapter 13 Plan ("Plan") in which he proposed to pay the second mortgage payment directly to the mortgage holder through August 2004, after which time the second mortgage would be paid by an unidentified third party. The Plan further provided that any remaining claim the Appellee would have against Busch for his failure to pay the second mortgage would be converted to an unsecured debt.

---

**3.** All future statutory references are to Title 11 of the Bankruptcy Code unless otherwise noted.

Under the Plan, unsecured creditors will realize approximately 10% of their claims.

Appellee moved to dismiss the Debtor's Chapter 13 case with prejudice. The bankruptcy court heard the motion and denied it. The Order provided that Busch could not become delinquent for fifteen days or more on payments to the trustee, the second mortgage holder, or child support. If any of those events occurred, the bankruptcy court provided for dismissal with prejudice. Additionally, the bankruptcy court ordered that a Motion for Relief from Stay by the Appellee could be heard within ten days' notice.

Subsequently, the Appellee filed a Motion for Relief from Stay ("Motion"). On September 16, 2002, the bankruptcy court heard the Motion and on November 22, 2002, entered an Order on Motion for Relief From Automatic Stay ("Order"). In the Order, the bankruptcy court found that there was cause to lift the stay to permit the state court to determine whether Busch had any equity in the former marital home.

This appeal timely followed.

## II. *Appellate Jurisdiction*

■ The Bankruptcy Appellate Panel has jurisdiction over this appeal. An order granting relief from the automatic stay is a final order. *Franklin Sav. Ass'n v. Office of Thrift Supervision*, 31 F.3d 1020, 1022 n. 3 (10th Cir.1994). Busch filed a timely notice of appeal. The parties have consented to this court's jurisdiction because they did not elect to have the appeal heard by the United States District Court for the District of Utah. 28 U.S.C. § 158(c)(1); Fed. R. Bankr.P. 8001.

## III. *Standard of Review*

"For purposes of standard of review, decisions by judges are traditionally divided into three categories, denominated questions of law (reviewable *de novo*), questions of fact (reviewable for clear error), and matters of discretion (reviewable for 'abuse of discretion')." *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988); see Fed. R. Bankr.P. 8013.

■ We review an order lifting the stay for abuse of discretion. *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir.1987). "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir.1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553–54 (10th Cir.1991) (further quotation omitted)).

## IV. *Discussion*

■ The principal issue here is whether the bankruptcy court abused its discretion when it lifted the automatic stay imposed by § 362(a) upon the filing of Busch's Third Case. The automatic stay serves to shield both a debtor and his creditors by permitting the debtor to marshal his affairs and by ensuring that the bankruptcy procedure may provide an orderly resolution of all claims. *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir.1984). Under § 362(d)(1) stay relief may be granted for cause. While cause under § 362(d)(1) includes "the lack of adequate protection of an interest in property," it is not so limited. 11 U.S.C. § 362(d)(1). Because "cause" is not further defined in the Bankruptcy Code, relief from stay for cause is a discretionary determination made on a case by case basis. *Pursifull*, 814 F.2d at 1506. The moving party has the burden to

show that "cause" exists to lift the stay, after which the burden shifts to a debtor to demonstrate why the stay should remain in place. 11 U.S.C. §§ 362(d)(1), 362(g).

Courts have found that one of the factors to consider when determining whether to modify the stay is whether doing so would permit pending litigation involving the debtor to continue in a nonbankruptcy forum. *Blan v. Nachogdoches County Hosp. (In re Blan)*, 237 B.R. 737, 739 (8th Cir. BAP 1999) (finding that Congress intended such a result because " '[i]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from duties that may be handled elsewhere.' ") (quoting H.R.Rep. No. 95–595, at 341 (1977), U.S.Code Cong. & Admin.News 1978, at 5963, 6297; S.Rep. No. 95–989, at 50 (1978), U.S.Code Cong. & Admin.News 1978, at 5787, 5836). Twelve factors were identified in *In re Curtis*, 40 B.R. 795, 799–800 (Bankr.D.Utah 1984), as some of the issues a bankruptcy court might consider when determining whether to lift the stay to permit pending litigation in another forum. These factors are frequently referred to as the *"Curtis* factors." *See, e.g., Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir.1990). The *Curtis* factors have been widely adopted by bankruptcy courts.[4]

In this case, the bankruptcy court considered the following seven *Curtis* factors: (1) whether the relief would result in a partial or complete resolution of the issues; (2) the lack of any connection with or interference with the bankruptcy case; (3) whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (4) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (5) the interest of judicial economy and the expeditious and economical determination of litigation for the parties; (6) whether the foreign proceedings had progressed to the point where the parties were prepared for trial; (7) the impact of the stay on the parties and the "balance of the hurt."[5] After weighing the factors, the bankruptcy court determined that six of the seven factors favored the Appellee, and that factor 3 favored neither party. The bankruptcy court concluded that there was cause to lift the stay to allow the state court to determine Busch's equity interest because further delay would prejudice the Appellee. The bankruptcy court further found that the state court was in a better position to interpret its Modification Or-

---

4. *See, e.g., Burger Boys, Inc. v. South St. Seaport Ltd. Partnership (In re Burger Boys, Inc.),* 183 B.R. 682, 688 n. 6 (S.D.N.Y.1994); *Northland Assocs. v. United States, I.R.S. (In re Abrantes Constr. Corp.),* 160 B.R. 484, 488 (N.D.N.Y.1993); *Goya Foods v. Unanue–Casal (In re Unanue–Casal),* 159 B.R. 90, 96 (D.P.R. 1993), *aff'd without published opinion,* 23 F.3d 395, 1994 WL 179925 (1st Cir.1994); *In re Fowler,* 259 B.R. 856, 859 n. 1 (Bankr. E.D.Tex.2001)

5. The other *Curtis* factors that the bankruptcy court did not consider in its orders are as follows: (1) whether the foreign proceeding involves the debtor as a fiduciary; (2) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (3) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit; (4) whether the judgement claim arising from the foreign action is subject to equitable subordination under Section 510(c); (5) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f). *Curtis,* 40 B.R. at 800.

der, and the Busch creditors would not be harmed by a state court decision.

Busch disputes the bankruptcy judge's conclusions with respect to five of the seven factors, arguing that the stay should not be lifted because the bankruptcy court is the best forum for resolving all the Appellee's claims in his case. We need not address each factor in dispute. Basically, all of Busch's arguments rely on the two following assumptions: 1) that he has an exempt homestead property interest in the former marital home; 2) that under § 522(f) the Appellee holds an avoidable lien on that property interest. Busch argues that if the state court is permitted to determine either (1) that he will have no equity in the home if he fails to pay the second mortgage in full, or (2) that the equity will be offset by the amount he fails to pay, he will be harmed, and the fresh start policy of the Code will be thwarted. As we discuss below, Busch's premises are flawed and cannot support his contentions that the bankruptcy court abused its discretion.

■ The first issue is whether Busch has an exempt homestead interest in the former marital home. Property interests of parties in bankruptcy proceedings are "created and defined by state law." *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). The Bankruptcy Code provides that a debtor is entitled to exempt certain assets from the estate. Section 522 sets out the federal exemption scheme. 11 U.S.C. § 522. However, § 522(b) permits states to create their own exemptions and prohibit their citizens from choosing federal exemptions.

11 U.S.C. § 522(b); *David Dorsey Distrib. v. Sanders (In re Sanders)*, 39 F.3d 258, 260 (10th Cir.1994). Utah has opted out of the federal exemption scheme by enacting § 78–23–15, which limits its citizens to the exemptions provided under state law. Utah Code Ann. § 78–23–15 (2002).

The Utah homestead exemption provides that an individual may exempt "an equitable interest in real property awarded to a person in a divorce decree by a court." Utah Code Ann. § 78–23–3(1)(c)(iii) (2002). On his schedules Busch claimed a $15,000 homestead exemption.[6] Under Utah law, Busch has a right to claim that exemption based on any equity interest he might have. What is unclear after the state Modification Order is whether Busch has a present interest he can exempt under the Utah homestead exemption. While acknowledging that Busch had claimed such an exemption, the bankruptcy court never directly addressed whether he properly did so.

Busch argues that he has a vested property interest in the former family home under the Decree and that this vested interest is subject to a condition subsequent. While we do not dispute that the Decree appears to have given him a vested interest in the former marital property, that interest has been subsequently changed by the Modification Order. In the Modification Order, the Utah state court made Busch's payment of the entire second mortgage a precondition of his right to receive his equity interest. What was a vested equity interest in the Decree appears to have been changed in the Modification Order to a future interest subject

---

6. We observe that it is questionable whether Busch can claim a $15,000 exemption. Under Utah law, if the property claimed exempt is not part of the party's primary personal residence, the homestead exemption is limited to $5,000 per individual. Utah Code Ann.

§ 78–23–3(2)(a)(i)(2002). There was no evidence that the former family home was Busch's primary personal residence. Busch appears to be entitled only to a $5,000 exemption.

to a condition precedent. *See Tremonton Inv. Co. v. Horne,* 59 Utah 156, 202 P. 547, 550 (1921) (explaining that when a contract depends on a condition subsequent, no rights vest until "certain prescribed acts are done or omitted"). Whether Busch has a vested interest or future interest is significant only because we can find no Utah law that addresses the question of whether an unvested interest can be the basis for a homestead exemption. The bankruptcy court did not directly decide that issue,[7] deferring it to the state court on the grounds that the state court was in a better position to interpret its own rulings. Here, the bankruptcy court did not abuse its discretion in doing so, particularly in light of the uncertainty of Busch's rights under Utah law.

■ Busch argues that the bankruptcy court should have decided the nature and extent of the Appellee's lien because the equity interest is exempt from any debt existing at the time of the filing of the bankruptcy case under § 522(c) and the lien is avoidable under § 522(f). Bankruptcy courts defer to state courts when determining the amount of an allowable homestead exemption; however federal law controls when determining the "availability of lien avoidance." *Sanders,* 39 F.3d at 260. Busch argues that this issue of whether the Appellee's lien on his equity interest can be avoided should be resolved by the bankruptcy court.

Section 522(f)(1) provides in pertinent part:

the debtor may avoid the fixing of a lien on the interest of a debtor in property to the extent that such a lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt. . . .

11 U.S.C. § 522(f)(1)(A). In *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991), the Supreme Court held that to determine the application of § 522(f), courts should ask "whether the lien impairs an exemption to which [the debtor] would have been entitled but for the lien itself." *Owen,* 500 U.S. at 310–13, 111 S.Ct. 1833. We interpreted this section in *McCart v. Jordana (In re Jordana),* 232 B.R. 469 (10th Cir. BAP 1999), *aff'd without published opinion,* 216 F.3d 1087, 2000 WL 783401 (10th Cir.2000), as requiring the debtor to show all three prongs of the following test: (1) the lien is a judicial lien; (2) the lien is fixed against an interest of the debtor in property; (3) the lien impairs an exemption to which the debtor would otherwise be entitled ("*Jordana* test"). *Jordana,* 232 B.R. at 473 (quoting *Henderson v. Belknap (In re Henderson),* 18 F.3d 1305, 1308 (5th Cir. 1994) (further citations omitted)).

■ The first question under the *Jordana* test is whether Busch's lien is a judicial lien. In Utah, an equitable interest in property awarded under a divorce decree is not a judicial lien; it is the dispossessed party's share of the assets. *Wiles v. Wiles,* 871 P.2d 1026, 1029 (Utah Ct.App. 1994) (distinguishing a lien awarded from a divorce decree, stating that it is not "a conventional lien created by operation of law or to secure payment of indebtedness"). Although the Utah courts do not directly state what kind of lien is awarded through a divorce decree, they imply that it is a consensual lien. *Id.* Thus, Busch does not meet this prong of the *Jordana* test.

---

7. In a footnote the bankruptcy court did state that "the Debtor does not have an equity interest to offset," until the precondition of paying the second mortgage in full was met. Appellant's App. at 127.

It is unclear whether Busch can meet the second prong of the *Jordana* test, which questions whether the lien fixed against an interest of the debtor in property. As we have already observed, the nature of the property interest granted in the Modification Order is uncertain. If it is a future interest, Utah law does not speak to whether an individual can claim a present exemption on a future interest. However, assuming arguendo that Busch does have a judicial lien that fixed on an interest he had in the equity of the former marital property, Busch's argument that the bankruptcy court should not have lifted the stay because the bankruptcy court was uniquely qualified to determine whether the lien was avoidable collapses under Supreme Court precedent.

Whether a lien created in a divorce decree that fixes on an interest also created in a divorce decree can be avoided under § 522(f)(1) as impairing an exemption was addressed by the Supreme Court in *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). In *Farrey,* as part of a property division in a divorce, the state court awarded the husband sole title to all of the real estate and to the family house. *Farrey,* 500 U.S. at 293, 111 S.Ct. 1825. The state court ordered the husband to pay the wife $29,208.44 in two installments as her interest in the value of the net assets. *Id.* To secure the award, the divorce decree provided for the wife to have a lien against the former marital property in the amount of $29,208.44 until her equity interest was fully paid. *Id.* The husband never made any of the payments and filed under Chapter 7 of the Bankruptcy Code, listing the former marital property on his bankruptcy schedules as exempt homestead property. The husband then filed a motion to avoid the ex-wife's lien under § 522(f)(1).

The Supreme Court found that § 522(f) permits a debtor to avoid only those liens that fix on a preexisting interest of a debtor. "Therefore, unless the debtor had the property interest to which the lien attached at some point before the lien attached to that interest, he or she cannot avoid the fixing of the lien under the terms of § 522(f)(1)." *Id.* at 296, 111 S.Ct. 1825. In *Farrey,* under Wisconsin law, the divorce decree simultaneously created the wife's lien and the husband's fee simple interest in the entire property. The Court held that the lien could not attach to an interest of the debtor in property because it fixed on a simultaneously created interest, not a preexisting one. *Id.* at 300, 111 S.Ct. 1825.

■■■ Here, we have the same situation. Under Utah law, the Decree created both the Appellee's lien and Busch's interest in the property simultaneously. *See Wiles v. Wiles,* 871 P.2d at 1029. And under *Farrey,* Busch cannot avoid the Appellee's lien pursuant to the provisions of § 522(f)(1).

With the failure of Busch's premise that the bankruptcy court was uniquely the best forum for determining issues relating to liens and lien avoidance under § 522(f), all of his other arguments topple. The bankruptcy court carefully and meticulously determined that there were grounds for lifting the stay. There was no abuse of discretion, and we must affirm.

## V. *Conclusion*

For the reasons stated above, the bankruptcy court's order is AFFIRMED.