**FILED**

**U.S. Bankruptcy Appellate Panel
of the Tenth Circuit**

**November 5, 2015**

**Blaine F. Bates
Clerk**

NOT FOR PUBLICATION

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

| | |
|---|---|
| IN RE BILLY RUSSELL DAMPIER, JR., former member Dampier Properties LLC, member Premier Signing Services, LLC,<br><br>Debtor. | BAP No.CO-15-006 |
| BILLY RUSSELL DAMPIER, JR.,<br><br>Appellant,<br><br>v.<br><br>CREDIT INVESTMENTS, INC. and MEDICAL LIEN MANAGEMENT, INC.,<br><br>Appellees. | Bankr. No.14-24526<br>Chapter7<br><br>OPINION[*] |

Appeal from the United States Bankruptcy Court
for the District of Colorado

Before **THURMAN**, **JACOBVITZ**, and **HALL**, Bankruptcy Judges.

**THURMAN**, Bankruptcy Judge.

The debtor appeals the bankruptcy court's order granting the creditors' motion for relief from stay to continue their state court action against him for fraud, breach of fiduciary duty, and civil theft. The bankruptcy court's order of relief was not stayed pending appeal, and the state court action proceeded to jury trial. Having reviewed the record and the applicable law, we conclude the

---

[*]     This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

bankruptcy court did not abuse its discretion in lifting the stay, and therefore affirm its order.

## I.    BACKGROUND[1]

The debtor, Billy Russell Dampier ("Debtor"), was previously employed by creditors Credit Investments, Inc. and Medical Lien Management, Inc. ("Creditors"). Creditors terminated the Debtor's employment in January 2012 after discovering he had embezzled company funds. Upon learning that the Debtor transferred five parcels of real estate to his wife in February and March 2012, Creditors filed a criminal report with the local police department. The Debtor was arrested in December 2012, and pled guilty to felony theft in July 2013. He was ordered to pay restitution of $203,000, and began paying the same in monthly amounts of $250. In December 2013, Creditors filed an action in state court against the Debtor for fraud, breach of fiduciary duty, and civil theft ("State Court Action").[2] A jury trial was set for November 17, 2014, and the state court denied several motions for continuance by both parties.

The Debtor filed his Chapter 7 petition on October 27, 2014,[3] which automatically stayed the State Court Action pursuant to 11 U.S.C. § 362(a).[4] Creditors filed a motion for relief from stay on November 4, 2014 ("Motion for

---

[1]    Unless otherwise indicated, this factual description is taken from the bankruptcy court's *Order On Motions for Relief from Stay ("Order Lifting Stay")*, *in* Appellant's App. at 63, published at *In re Dampier*, 523 B.R. 253 (Bankr. D. Colo. 2015).

[2]    Creditors also named the Debtor's wife, Monica Lynn Dampier, as a defendant, on the basis of unjust enrichment and aiding and abetting wrongful conduct.

[3]    Monica Dampier divorced the Debtor in 2013 and filed a voluntary Chapter 13 case on October 22, 2014.

[4]    Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code.

Stay Relief").[5]  A preliminary hearing was held on December 2, 2014, and the matter was then set for final hearing on January 5, 2015.  After listening to the testimony of witnesses and taking evidence, the bankruptcy court entered its order granting the Motion for Stay Relief on January 12, 2015 ("Order Lifting Stay"), but prohibiting Creditors from enforcing any judgment they may obtain in the State Court Action unless permitted by further order of the court.

   Creditors filed a nondischargeability complaint on January 20, 2015,[6] together with a motion to suspend the adversary proceeding pending completion of the State Court Action.  The Debtor timely appealed the Order Lifting Stay on January 22, 2015,[7] but did not file a motion to stay the bankruptcy court's decision pending appeal.  The State Court Action proceeded to trial in July 2015, several weeks prior to oral argument in this appeal on Tuesday, August 25, 2015.  The parties did not inform this Court about trial of the State Court Action until Friday, August 21, 2015, when the Debtor filed a motion to hold the appeal in abeyance.[8]  The Debtor's motion was denied by order dated August 24, 2015,[9] and oral argument proceeded.  According to the parties, following a five-day trial, the jury returned verdicts on two counts in favor of Creditors and one in favor of Debtor, but the court presiding over the State Court Action had not entered its final order or judgment as of the date of oral argument.  Additionally, the Debtor

---

[5]     *Motion for Relief from Stay*, *in* Appellant's App. at 4.

[6]     *Complaint, in* Appellant's App. at 69.  Creditors asserted their claims against the Debtor are nondischargeable pursuant to 11 U.S.C. § 523(a)(2), (4), (6), and (7).

[7]     Creditors filed their Motion for Stay Relief in Monica Dampier's Chapter 13 case as well, and the Order Lifting Stay was entered in both Debtor's and Monica's bankruptcy cases.  Monica, however, did not appeal the Order Lifting Stay.

[8]     *Motion to Hold Appeal in Abeyance*, BAP ECF No. 49.

[9]     *Order Denying Motion to Hold Appeal in Abeyance*, BAP ECF No. 51.

filed a motion for judgment notwithstanding the verdict on the basis of the statute of limitations, which as of the date of oral argument, remains pending before the state court.

## II.    APPELLATE JURISDICTION[10]

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[11] Debtor's election to have this appeal heard by the United States District Court for the District of Colorado was denied, and therefore, this Court has jurisdiction to hear the appeal.[12]

---

[10]    Although the issue of mootness was not raised by the parties, this Court has a duty to establish its own jurisdiction and, arguably, a final state court judgment might render this appeal moot. An appeal is moot "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party . . . ." *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992) (citing *Mills v. Green*, 159 U.S. 651, 653 (1895)). Because the Debtor failed to obtain a stay of the bankruptcy court's order lifting stay, the State Court Action has now proceeded through trial. However, in a status report submitted to the bankruptcy court on October 5, 2015, Creditors represented that there were still post-trial motions pending in the State Court Action, and that Creditors have appealed the state court judgment. Case No. 15-0102 ECF No. 12. Additionally, the bankruptcy court specifically prohibited enforcement of any judgment obtained in state court, and the Creditors' adversary proceeding was stayed pending resolution of the State Court Action. Finally, if this Court were to reverse the order lifting the stay, any action the state court had taken would be a nullity under *Ellis v. Consol. Diesel Elec. Corp.*, 894 F.2d 371, 372 (10th Cir. 1990) (action taken in violation of the automatic stay "is void and without effect"). Given these facts, this Court is reasonably confident that the appeal is not moot. In any event, given our holding affirming the Order Lifting Stay, the concept of mootness has less impact than it would if we had reversed.

[11]    28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8005; 10th Cir. BAP L.R. 8005-1.

[12]    Together with his Notice of Appeal, the Debtor filed a separate document purporting to elect to have the appeal heard by the United States District Court for the District of Colorado. The election was immediately denied by this Court for failure to follow 10th Cir. BAP L.R. 8005-1(a), which requires the election to be included in the notice of appeal. The Debtor filed a motion asking that denial of his election to district court be reconsidered. On January 27, 2015, a motions panel of this Court entered an order denying the motion to reconsider. *Order Denying Motion for Reconsideration*, BAP ECF No. 13.

A decision is considered final "if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[13]  In their Response Brief, Creditors argue the bankruptcy court's Order Lifting Stay is neither a final order, nor one that falls under the collateral order doctrine.[14]  Therefore, they assert that because the Debtor did not seek leave to appeal, this Court does not have jurisdiction.  Apparently, Creditors view the stay relief proceeding, the State Court Action, and the pending but stayed nondischargeability proceeding as one continuous process.  Creditors' view is not without logic from a layman's perspective.  However, bankruptcy proceedings are an aggregation of controversies, and finality has a less restrictive meaning here than in non-bankruptcy actions.[15]  In the bankruptcy context, the appropriate judicial unit for purposes of finality under 28 U.S.C. § 158(d)(1) may be a discrete controversy.[16]  Here, the bankruptcy court's order granting relief from the automatic stay is a discrete controversy that is final for purposes of review.[17]

## III.    ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Debtor argues the bankruptcy court erred in granting stay relief for two reasons.  First, he contends the bankruptcy court has exclusive jurisdiction over Creditors' causes of action against him because they relate to

---

[13]    *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996) (quoting *Catlin v. United States*, 324 U.S. 229, 233 (1945)).

[14]    *Appellee's Opening Br.* at 7-12.

[15]    *Crossingham v. Baines (In re Baines)*, 528 F.3d 806, 809 (10th Cir. 2008).

[16]    *Id.* at 810.

[17]    *Rajala v. Gardner*, 709 F.3d 1031, 1034 (10th Cir. 2013) (orders granting or denying relief from stay are final for purposes of appeal); *Eddleman v. U.S. Dep't of Labor*, 923 F.2d 782, 785 (10th Cir. 1991) (immediate appeal "is necessary to effectuate Congress' intent to settle these matters quickly"), *overruled in part on other grounds*, *Temex Energy, Inc. v. Underwood, Wilson, Berry, Stein & Johnson*, 968 F.2d 1003 (10th Cir. 1992); *In re Busch*, 294 B.R. 137, 140 (10th Cir. BAP 2003).

types of debt that are potentially nondischargeable pursuant to § 523(a)(2), (a)(4), and (a)(6). Second, the Debtor asserts that even if the bankruptcy court did not have exclusive jurisdiction, it erred in granting stay relief to allow Creditors to pursue their prepetition State Court Action against him, because it would have been better litigated in bankruptcy court.

For purposes of standard of review, decisions by trial courts are traditionally divided into three categories, denominated: 1) questions of law, which are reviewable *de novo*; 2) questions of fact, which are reviewable for clear error; and 3) matters of discretion, which are reviewable for abuse of discretion.[18] To the extent Debtor raises jurisdictional concerns, we review any alleged error *de novo*.[19] *De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[20] The standard of review applicable to an order granting relief from the automatic stay is abuse of discretion.[21] "Under the abuse of discretion standard: 'a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"[22] "An abuse of discretion occurs when

---

[18]     *Pierce v. Underwood*, 487 U.S. 552, 558 (1988); *see Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir. 1996).

[19]     *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994) (determination of a court's subject matter jurisdiction is a question of law that we review *de novo*).

[20]     *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of deference is acceptable.").

[21]     *Pursifull v. Eakin*, 814 F.2d 1501, 1504 (10th Cir. 1987); *In re Busch*, 294 B.R. 137, 140 (10th Cir. BAP 2003).

[22]     *Moothart v. Bell*, 21 F.3d 1499, 1504 (10th Cir. 1994) (quoting *McEwen v. City of Norman*, 926 F.2d 1539, 1553-54 (10th Cir. 1991)).

the [trial] court's decision is arbitrary, capricious, or whimsical, or results in a manifestly unreasonable judgment."[23]

## IV.    ANALYSIS

### A.    Bankruptcy and State Courts Have Concurrent Jurisdiction

On appeal, the Debtor first argues the bankruptcy court erred, as a matter of law, "by permitting the state court litigation to proceed as to issues for which the Bankruptcy Court has exclusive jurisdiction."[24]  Based on his Opening Brief, the Debtor appears to believe the stay relief granted by the bankruptcy court results in the state court being permitted to determine whether Creditors' claims against him are dischargeable.  However, the Debtor's argument fails to distinguish between the separate issues of entitlement to assert a claim, and whether or not that claim is dischargeable.

Pursuant to 28 U.S.C. § 1334(a) and (b), district courts have "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[25]  "Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him . . . from further liability for old debts."[26]  Since dischargeability determinations must necessarily be resolved as part of the process of allowing or disallowing claims

---

[23]    *United States v. Weidner*, 437 F.3d 1023, 1042 (10th Cir. 2006) (quoting *Moothart v. Bell*, 21 F.35 1499, 1504-05 (10th Cir. 1994); *see also Joseph v. Lindsey (In re Lindsey)*, 229 B.R. 797, 800-01 (10th Cir. BAP 1999).

[24]    Appellant's Opening Brief at 7.

[25]    Pursuant to 28 U.S.C. § 157(a) and (b), district courts may refer that jurisdiction to the bankruptcy courts, including "all core proceedings arising under title 11, or arising in a case under title 11."

[26]    *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 363-64 (2006).

against a bankruptcy estate, discharge disputes involve "public rights," and are properly decided by bankruptcy courts.[27] Thus, debt dischargeability is designated as a "core" bankruptcy proceeding, over which bankruptcy courts have exclusive jurisdiction.[28]

On the other hand, bankruptcy courts and state courts have concurrent jurisdiction to adjudicate the validity of disputes arising under applicable non-bankruptcy law, including the validity and the amount of claims asserted against debtors.[29] But bankruptcy courts have exclusive jurisdiction to determine whether state court judgments against debtors are properly discharged in bankruptcy. Accordingly, the Debtor's argument in this case, that the bankruptcy court has exclusive jurisdiction to determine the validity and amount of Creditors' claims, and therefore erred as a matter of law by lifting the stay, is not persuasive.[30]

## B. Granting Stay Relief was not an Abuse of Discretion

Whether there is "cause" for relief from the automatic stay under § 362(d) is a discretionary decision made by the bankruptcy court on a case-by-case basis.[31] The United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") has not "set forth a precise framework or exhaustive set of factors for

---

[27]     *See In re Bellingham Ins. Agency*, 702 F.3d 553, 564–65 (9th Cir. 2012) (public rights disputes in bankruptcy are those that are necessarily resolved in the process of claims-allowance), *aff'd on other grounds sub nom*, *Exec. Benefits Ins. Agency v. Arkison*, 134 S.Ct. 2165 (2014).

[28]     28 U.S.C. § 157(b)(2)(I).

[29]     *In re Skyline Woods Country Club*, 636 F.3d 467, 471 (8th Cir. 2011); *Buke, LLC v. Eastburg (In re Eastburg)*, 447 B.R. 624, 634 (10th Cir. BAP 2011).

[30]     At oral argument, counsel for Debtor continued to argue the bankruptcy court had exclusive jurisdiction, but eventually conceded the point.

[31]     *In re Carbaugh*, 278 B.R. 512, 525 (10th Cir. BAP 2002) (citing *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987)). *See also In re Blair*, 534 B.R. 787, 792 (Bankr. D. N.M. 2015).

analyzing whether cause exists."[32]  However, regarding continuation of litigation in another forum, the Tenth Circuit has emphasized one criterion in its analysis of stay relief decisions.  In *In re Gindi*, the Tenth Circuit stated there is "one factor that can be dispositive in determining whether a party can successfully move for relief from the automatic stay under § 362(d)(1)–namely, the likelihood that the movant would prevail in the litigation if the stay were lifted."[33]

In the absence of a comprehensive Tenth Circuit test, a list of factors identified in *In re Curtis*[34] is often relied on by courts in their determination of whether stay relief should be granted.[35]  Those factors ("*Curtis* factors") are:

(1) Whether the relief will result in a partial or complete resolution of the issues.

(2) The lack of any connection with or interference with the bankruptcy case.

(3) Whether the foreign proceeding involves the debtor as a fiduciary.

(4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.

(5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.

(6) Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.

---

[32]  *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).

[33]  *Id.* (citing and analogizing to *SEC v. Vescor Capital Corp.*, 599 F.3d 1189, 1191-92 (10th Cir. 2010)).

[34]  *In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984).

[35]  *See, e.g., In re Busch*, 294 B.R. 137, 141 (10th Cir. BAP 2003);  *In re Blair*, 534 B.R. 787, 792 (Bankr. D. N.M. 2015); *In re Sunland, Inc.*, 508 B.R. 739, 743 (Bankr. D. N.M. 2014).

(7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.

(8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).

(9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).

(10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties.

(11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.

(12) The impact of the stay on the parties and the "balance of hurt."[36]

This Court considers the *Curtis* factors relevant to the bankruptcy court's stay relief determination, and agrees that those factors should be considered in connection with our analysis of this appeal.

In this case, the bankruptcy court carefully evaluated the Creditors' Motion for Stay Relief in light of the *Curtis* factors, as well as the likelihood of success factor emphasized by the Tenth Circuit in *Gindi*.[37] The bankruptcy court found that the third, fourth, fifth, sixth, and eighth *Curtis* factors were either inapplicable or neutral, but that each of the remaining applicable *Curtis* factors and the *Gindi* factor favored stay relief. Therefore, it granted relief from stay to allow Creditors to proceed with the State Court Action, which had been ready for trial prior to the filing of the Debtor's Chapter 7 petition.

---

[36]     *In re Curtis*, 40 B.R. at 799-800 (citations omitted).

[37]     *In re Dampier*, 523 B.R. 253, 256-59 (Bankr. D. Colo. 2015).

The Debtor argues "the bankruptcy court abused its discretion in finding that the *Curtis factors* favored relief from stay."[38]  Specifically, he takes issue with the bankruptcy court's conclusions as to the first and tenth *Curtis* factors.[39]  The first *Curtis* factor for stay relief analysis asks a bankruptcy court to determine whether the relief will result in a partial or complete resolution of the issues.  With respect to this factor, the bankruptcy court concluded that, although stay relief would not result in a complete resolution of the issues, "allowing the State Court Lawsuit to proceed [would] likely result in the resolution of questions of fact and liability that are significant in [Debtor's] bankruptcy case."[40]  The tenth *Curtis* factor asks a bankruptcy court to consider the interest of judicial economy and the expeditious and economical determination of litigation for the parties.  Here, the bankruptcy court indicated that judicial economy, together with the eleventh *Curtis* factor, *i.e.*, whether the parties are prepared for trial in the foreign proceeding, are the factors that should be given the most weight in this case, concluding that:

> The State Court Lawsuit has been pending before the Jefferson County District Court for over a year.  That court has already heard motions to continue, which it denied, and a motion for sanctions, which it set for hearing in conjunction with the trial.  The Debtor['s] bankruptcy case [was] filed on the eve of a trial that Creditors' state court counsel testified was ready to proceed.  Forum shopping is the antithesis of judicial economy.  The Court finds that the tenth and eleventh factors strongly support allowing the State Court Lawsuit to proceed.[41]

We are not persuaded that these conclusions are erroneous.

The overall thrust of the Debtor's argument on appeal is that the bankruptcy court's conclusions regarding the *Curtis* factors are erroneous because

---

[38]     Appellant's Opening Brief at 1.

[39]     *Id.* at 15.

[40]     *In re Dampier*, 523 B.R. at 257.

[41]     *Id.* at 258.

"the doctrines of *res judicata* and collateral estoppel/issue preclusion would be unavailable to [Creditors], and trial in state court could only be described as a 'dry run.'"[42]  This argument is flawed.

Although creditors may not be entitled to use res judicata or claim preclusion in the dischargeability context,[43] collateral estoppel, or issue preclusion, principles are applicable to such proceedings.[44]  As this Court has previously held, "[w]hile ultimately, a bankruptcy judge determines whether a debt is nondischargeable under § 523, a state court judgment may preclude the relitigation of settled facts under the collateral estoppel doctrine."[45]

In accordance with the full faith and credit statute,[46] to determine the preclusive effect of a state court judgment, federal courts refer to the preclusion law of the state in which such judgment was rendered.[47]  Therefore, Colorado law would control the effect the bankruptcy court could give to a judgment obtained in the State Court Action.  Under Colorado law:

> [t]he doctrine [of issue preclusion] applies to bar subsequent litigation *only* if (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party

---

[42]     Appellant's Opening Brief at 15.

[43]     *Brown v. Felsen*, 442 U.S. 127, 138-39 (1979).

[44]     *Grogan v. Garner*, 498 U.S. 279, 284-85 (1991); *Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 764 (10th Cir. 1988); *Goss v. Goss*, 722 F.2d 599 (10th Cir. 1983).

[45]     *Hill v. Putvin (In re Putvin)*, 332 B.R. 619, 625 (10th Cir. BAP 2005).

[46]     28 U.S.C. § 1738.

[47]     *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *Nichols v. Bd. of Cty. Comm'rs*, 506 F.3d 962, 967 (10th Cir. 2007).

against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.[48]

Additionally, "[e]ven if not explicitly determined, an issue is nevertheless considered to have been 'actually' determined for purposes of collateral estoppel if its resolution is necessarily implied in an actual determination" under Colorado law.[49] If these requirements are met, then resolution of many questions of fact and liability that are resolved in the State Court Action would not need to be relitigated before the bankruptcy court in Creditors' nondischargeability adversary.

Here, the Debtor's assertion that there can be no identity of issues for collateral estoppel purposes is accurate in only one very narrow sense. In fact, during oral argument, Debtor's counsel admitted it was likely not an abuse of discretion for the bankruptcy court to permit Creditors' civil theft and fraud causes of action to go forward in state court. The Debtor's argument regarding the State Court Action's possible prior adjudication impact therefore relates only to Creditors' cause of action for breach of fiduciary duty.

In 2013, the United States Supreme Court held that, for purposes of § 523(a)(4), defalcation by a fiduciary requires a culpable state of mind involving knowledge of, or gross recklessness in respect to, the improper nature of the fiduciary behavior.[50] According to the Debtor, Colorado law does not require a particular mental state for breach of fiduciary duty. If so, the bankruptcy court's determination of whether the state court judgment against the Debtor for breach of fiduciary duty is a nondischargeable debt under § 523(a)(4) may require further inquiry into culpability. However, it does not necessarily follow that allowing the

---

[48]     *Reynolds v. Cotten*, 274 P.3d 540, 543 (Colo. 2012).

[49]     *Id.* at 544.

[50]     *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754, 1757 (2013).

breach of fiduciary duty claim to proceed in state court was in error, for several reasons.

First, it is feasible that factual determinations made in the State Court Action with respect to Creditors' breach of fiduciary duty claim would not need to be relitigated in the nondischargeability proceeding before the bankruptcy court, including such elements as whether Debtor owed Creditors a fiduciary duty, whether he breached that duty, and the damages that resulted from breach.[51] Second, the Debtor's requisite mental state for purposes of § 523(a)(4) defalcation could be established in the State Court Action if, for example, the jury made special findings or awarded Creditor punitive damages.[52] And third, the Debtor has never suggested that what transpired procedurally in the State Court Action, such as presentation of evidence and defenses, would have been any different had the bankruptcy court lifted the stay only with respect to the Creditors' other causes of action against the Debtor and not the breach of fiduciary duty claim.[53]

The bankruptcy court's conclusions regarding the first and tenth *Curtis* factors, which relate to judicial efficiency and economy, are not erroneous.

---

[51]     *See In re Pemstein*, No. CC-15-1019, 2015 WL 5591626, at *4-5 (9th Cir. BAP Sept. 21, 2015); *Ke v. Wang*, No. 5:13-CV-1203, 2014 WL 4626329 at *4 (N.D.N.Y. Sept. 15, 2014); *In re Aiello*, 533 B.R. 489, 505 (Bankr. W.D. Pa. 2015).

[52]     *See Clear Sky Properties LLC v. Roussel (In re Roussel)*, 504 B.R. 510, 523-24 (E.D. Ark. 2013).

[53]     Although § 523(a)(4) requires proof of the existence of an express or technical (statutory) trust (*Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1371 (10th Cir. 1996)), it does not appear that Creditors alleged such a trust in the State Court Action. This Court specifically declines to speculate as to whether that fact restricted Creditors' ability to put on evidence of such a trust at trial, particularly since the judgment in the State Court Action has not been presented here and its collateral estoppel effect is not before us. In any event, Debtor's argument regarding the impact of the state court's prior adjudication of Creditors' breach of fiduciary duty claim is only one of the considerations in our analysis of whether the bankruptcy court abused its discretion in lifting the automatic stay to allow the State Court Action to proceed.

Discovery had been completed in the State Court Action and it was set for trial less than three weeks after the Debtor's Chapter 7 petition was filed. Further, the results in the State Court Action with respect to Creditors' causes of action for civil theft and fraud could be given collateral estoppel effect in the bankruptcy nondischargeability proceeding. This may also be true for some, though perhaps not all, elements required for establishing nondischargeability under § 523(a)(4) for defalcation by a fiduciary. The bankruptcy court also correctly determined that the likelihood of success factor, emphasized by the Tenth Circuit in *Gindi*,[54] was met, as the Debtor had already pled guilty to felony theft. Accordingly, we hold that the bankruptcy court correctly concluded that the interests of judicial economy and the expeditious and economical determination of litigation favored stay relief, and it's Order Lifting Stay was not an abuse of discretion.

## V. CONCLUSION

The bankruptcy court carefully analyzed and applied the *Curtis* factors, and the *Gindi* likelihood of success factor. It concluded the factors favored stay relief, and the Debtor has not made any arguments on appeal to demonstrate that the bankruptcy court abused its discretion in doing so. Therefore, the Order Lifting Stay is AFFIRMED.

---

[54] *Chizzali v. Gindi (In re Gindi)*, 642 F.3d 865, 872 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011).