Robert D. Berger, United States Bankruptcy Judge
Larry and Terri Anderson filed a personal injury action against the debtor Trust[1] on February 5, 2018, in Greene County, Missouri. In that action, the Andersons seek damages for injuries allegedly suffered by Mr. Anderson at one of Debtors' properties in 2015, prior to the commencement of Debtors' bankruptcy cases. Acknowledging that they have not filed a proof of claim against the Trust, the Andersons now move this Court to annul the automatic stay under § 362(d)[2] and *87 modify the § 524 discharge injunction[3] to allow their state court action to proceed-not to collect from the Trust, but rather to establish liability so that they may collect from the Trust's insurer, Travelers.[4] The Trust opposes the Andersons' motion in briefs[5] filed jointly with creditor JD Holdings, L.L.C. (together with the Trust, the "Joint Objectors "), which is obligated to pay all allowed claims against Debtors pursuant to Debtors' confirmed Chapter 11 plans.
The Joint Objectors' opposition to the Andersons' motion is due to the nature of Debtors' Insurance Program Agreement with Travelers (the "IPA ").[6] Under a conventional insurance policy, premiums are paid up-front. Policies subject to the IPA, however, may include a yearly "Retrospective Plan Premium Adjustment Amount" (the "Adjustment") under which additional premiums, based in part on "Incurred Losses,"[7] are paid by the insured after the applicable policy period. The Joint Objectors argue that any recovery the Andersons might obtain from Travelers would be charged to Debtors via the Adjustment, and that this economic effect on Debtors precludes stay annulment and modification of the discharge injunction.
However, on the record before this Court, it is impossible to determine whether the Andersons' theoretical recovery from Travelers would subsequently be charged to Debtors, as the record lacks:
• the IPA for the applicable insurance period, see note 5 supra ;
• the policy for the applicable insurance period,[8] see id. ;
• evidence as to when a loss attributable to the Andersons would be "Incurred" under the IPA;[9] and
• a complete and accurate explanation of how the Adjustment is calculated.[10]
*88 Therefore, and for the reasons stated below, the Andersons' motion will be granted to the extent necessary for them to obtain a final judgment in their Missouri action, but not to collect thereon. This Court will reserve jurisdiction over the issue of how much of the judgment the Andersons may collect from Travelers, and the parties may return to this Court for adjudication of that issue once the judgment is final.
1. Stay Relief
Section 362(d) allows this Court to grant stay relief "for cause." "The moving party has the burden to show that 'cause' exists to lift the stay, after which the burden shifts to a debtor to demonstrate why the stay should remain in place." In re Busch, 294 B.R. 137, 140-41 (10th Cir. BAP 2003). The factors identified in In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984), have been widely adopted by bankruptcy courts in determining whether cause exists to grant stay relief "to permit litigation against the debtor to proceed in another forum." Id. at 799 ; see In re Jim's Maintenance & Sons, 418 Fed. App'x 726, 728 n.1 (10th Cir. 2011) (quoting In re Busch, 294 B.R. 137, 140 (10th Cir. BAP 2003) ). These " Curtis factors" are:
(1) whether the relief will result in a partial or complete resolution of the issues;
(2) the lack of any connection with or interference with the bankruptcy case;
(3) whether the foreign proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal has been established to hear the particular cause of action;
(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;
(6) whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question;
(7) whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties;
(8) whether the judgment claim arising from the foreign action is subjection to equitable subordination under § 510(c);
(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under § 522(f);
(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;
(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and
(12) the impact of the stay on the parties and the "balance of hurt."
Curtis, 40 B.R. at 799-800.
As applied here, the Curtis factors favor a grant of stay annulment. Allowing the Missouri action to proceed will completely resolve the issue of liability on the Andersons' personal injury claims, which cannot be adjudicated by this Court (factor 1);[11] establishing liability without allowing collection on a judgment will not interfere with Debtors' bankruptcy case (factor 2); the Trust is not responsible for defense costs (factor 5);[12] the Missouri action essentially involves third parties (the *89 Andersons and Travelers), with the Trust participating in name only (factor 6); establishing liability will not prejudice any other interested party (factor 7); and judgment in favor of the Andersons would not be subject to equitable subordination or result in an avoidable judicial lien (factors 8 and 9). The Andersons have thus established cause for annulment of the automatic stay. Because the Joint Objectors base their response on a hypothetical cost to the Trust under documents not provided to the Court, the Joint Objectors have not demonstrated why the stay should not be retroactively annulled. Therefore, the motion for annulment of the stay will be granted to the extent necessary for the Andersons to obtain a final judgment in their Missouri action, but not to collect thereon.[13]
2. Modification of Discharge Injunction
Under § 524(e), "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."
It is well established that this provision permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when, as here, establishment of that liability is a prerequisite to recovery from another entity. Logically enough, this exception to section 524(a)'s post-discharge injunction hinges "upon the condition that the debtor not be personally liable in a way that would interfere with the debtor's fresh start in life."
Walker v. Wilde (In re Walker), 927 F.2d 1138, 1142 (10th Cir. 1991) (citations omitted). Here, modification of the discharge injunction to the extent necessary for the Andersons to obtain a final judgment in their Missouri action, but not to collect thereon, will not interfere with Debtors'
*90 fresh start.[14] Therefore, the Andersons' motion for modification of the discharge injunction will be granted to that extent.
3. Conclusion
For the foregoing reasons, the motion for annulment of the automatic stay and modification of the discharge injunction is hereby granted to the extent necessary for the Andersons to obtain a final judgment in their Missouri action, but not to collect thereon. This Court reserves jurisdiction over the issue of how much of the judgment the Andersons may collect from Travelers, and the parties may return to this Court for adjudication of that issue once the judgment is final. The balance of the judgment, if any, shall not be collectable from Debtors or J.D. Holdings.
IT IS SO ORDERED.

The "Trust " is debtor The Revocable Trust of John Q. Hammons dated December 28, 1989 as Amended and Restated. While the Andersons' complaint originally named debtor U.P. Catering as a defendant, the Andersons later substituted Greggory Groves and Jacqueline Dowdy (as trustees for the Trust) in its place. Since a lawsuit against the trustees of a Missouri trust is a lawsuit against the trust itself under Missouri law, see Lorimont Place, Inc. v. Jerry Lipps, Inc., 403 S.W.3d 104, 108 (Mo. Ct. App. 2013) (citation omitted), this order refers to the state court action as one against the Trust.

ECF 2419; ECF 2463. All statutory references in this order are to Title 11, United States Code ("the Bankruptcy Code ").

The Andersons do not oppose the Joint Objectors' assertion that the Andersons' claim against the Trust was discharged in the order confirming Debtors' joint Chapter 11 plans. Cf. Corrected Order 36 ¶ 20, ECF 2188.

See Hr'g Tr. 7:15-17, Aug. 20, 2018, ECF 2534 ("We're simply trying to get at the insurance policy in question. We're not trying to get towards any of the assets of the Debtors.").

ECF 2430; ECF 2509.

The Court notes that the IPA attached to the Joint Objectors' responsive brief covers the period from October 1, 2015, to October 1, 2016, whereas Mr. Anderson's injuries occurred in January 2015. Thus, it appears that the IPA on the record does not actually apply to this matter.

"Incurred Loss " means "all losses actually paid and the reserves for unpaid losses as estimated by [Travelers] attributed to the Retrospective Plan Policies." Ins. Program Agreement 11, ECF 2430-2.

The IPA presented to the Court suggests that some policy premiums may not be subject to the Adjustment. See id. at 4 ("Non-Loss Responsive Premium").

Cf. id. at 11 (including "reserves for unpaid losses as estimated by [Travelers]" in the definition of "Incurred Loss"); Hr'g Tr. 28:20-24, Aug. 20, 2018, ECF 2534 ("Mr. Anderson alleges that he suffered injuries from a fall that occurred at the Missouri Sports Hall of Fame in January 2015. And Mr. Anderson made demand on the Debtors shortly thereafter ....").

Rather than providing a formula for the Adjustment, the Joint Objectors provided a formula for the Retrospective Plan Premium. See Supplemental Brief 3 n.2, ECF 2509 ("The specific formula for calculating the Adjustment is as follows ...."). The two do not appear to be equivalent. Compare Ins. Program Agreement 1, ECF 2430-2 ("Retrospective Plan Computation Formula"), with id. at 3 (" ... the resulting amount will be the Retrospective Plan Premium Adjustment Amount for that Adjustment Date.).

See 28 U.S.C. § 157(b)(5).

See Hr'g Tr. 58:19-20, Aug. 20, 2018, ECF 2534.

The parties agree that Curtis applies here, and the Court has analyzed the Andersons' motion according to the factors set out in that case. However, courts considering retroactive annulment of the automatic stay, as opposed to prospective relief from it, have looked to different factors. See, e.g., In re Schumann, 546 B.R. 223, 239 (Bankr. D.N.M. 2016) :
Several factors are relevant to the determination of whether nunc pro tunc relief from the automatic stay should be granted, including:
1) whether the creditor had actual or constructive knowledge of the debtor's bankruptcy filing when it acted in violation of the automatic stay;
2) whether the debtor filed the bankruptcy case in bad faith or otherwise acted in bad faith;
3) whether "grounds for relief from the stay existed and a motion, if filed, would likely have been granted prior to the automatic stay violation";
4) how quickly the creditor sought annulment of the automatic stay upon learning of the debtor's bankruptcy filing;
5) whether the creditor continued to violate the stay after learning of the debtor's bankruptcy filing;
6) whether the debtor remained "stealthily silent" in the face of the creditor's unknowing violation of the stay; and
7) whether the creditor would be prejudiced if the stay were not annulled.
Id. Here, Mr. Anderson (to whom notice of the claims bar date was mailed) had actual knowledge of Debtors' bankruptcy and there is no evidence that Debtors acted in bad faith at any time. However, the Trust did not file its Notice/Suggestion of Bankruptcy in the Missouri case until May 23, 2018. The Andersons' Missouri counsel does not appear to have known about the bankruptcy before then, and they filed the present motion for stay relief less than two months later. Furthermore, because the Curtis factors favor a grant of stay relief now, relief would likely have been granted prior to the automatic stay violation. For these reasons, retroactive annulment would be appropriate under Schumann and similar cases if Curtis does not apply.

Cf. Hr'g Tr. 58:19-20, Aug. 20, 2018, ECF 2534 ("Here, we don't have to pay the defense costs ....").